United Cook Inlet Drift Association v. National Marine Fisheries Service, case number 20-35029. This case is set for 15 minutes per side. I understand the defendants, appellees are splitting time, is that correct? Yes, that's correct. Okay, okay, and I have it here 11 minutes and 4 minutes, so correct me if I'm wrong on that, but we'll ask you just to watch your own time on that. Mr. Morgan, you may proceed. Thank you, Your Honor. Good evening, and may it please the Court, Jason Morgan on behalf of the United Cook Inlet Drift Association and the Cook Inlet Fishermen's Fund. I would like to reserve 4 minutes for rebuttal. I want to make 3 points today. First, the Ninth Circuit's prior decision in United Cook requires a fishery management plan for each fishery, as that term is defined by the Magnuson Act. Second, the Court has authority to require compliance with that prior holding. And third, the relief requested is urgently needed prior to fishing season 2020. Okay, so can I start? I'm going to just start on the first one, because I'll be honest. I read our prior opinion, and I didn't see anything in it that provided you a hook to be raising the arguments that you're now raising. Not to say that you're not entitled to, you know, vet out the relief you're requesting, but can you explain to me specifically what we held in our prior decision that you are saying has not been complied with? Thank you, Your Honor. I'll turn your attention to ER 34, and I'll read from that. It says, the government argues that Section 1852A.1 does not expressly require an FMP to cover an entire fishery, noting that the provisions say nothing about the geographic scope of the plan at all. The statute requires an FMP to cover a fishery, a defined term, then cites the definition of a fishery. No dispute to the intended area of the continent and its fishery, but under the government's interpretation, it should fulfill its statutory obligation by issuing an FMP applying only to certain amounts of So, I understand the holding to be that an FMP is required. An FMP is actually an agency action. I mean, it's a regulation of sorts, isn't it? An FMP is not a regulation. An FMP is a plan. A plan produced by the Council is then reviewed and approved for implementing regulations for the plan. The plan itself is not a regulation. So, are you suggesting that they just haven't done the plan part of it? I mean, it does have to be fully implemented by regulation at some point, right? It does, but the court held that the Magnuson-Stevens Act unambiguously requires the Council to create a fishery management plan for a fishery under its ability that requires consultation and management. But that's being done. And in fact, didn't the district court order them to get it done by the end of this year? I think you have to look at the Ninth Circuit's prior decision in the context of what it means for each fishery. The court said in United Cook that fishery means what the statute says. Well, that may be true, but you then went back to the district court and you agreed upon a settlement, basically incorporating the circuit court's decision, right? It wasn't a settlement. Is there anything in the judgment that you proffered to the district court? Is there that have been violated in the subsequent time? I think our position before the district court and our position now, that it's not sufficient to simply comply with the district court's order. It must also comply with instructions set down by this court in United Cook. Yeah, but we didn't... They're doing an FMP. We said prepare an FMP. They're preparing an FMP. Rightly or wrongly, we didn't set a time period in the prior appeal. You came back and said, no, we need this done quicker. That's not unusual. Agencies, especially here where it's not just agencies, but you're dealing with a whole bunch of parties, that can take a while. And I understand your client's position that, hey, it's taking too long here, but we never set a deadline. And so when you came back in to request a deadline, the district court has now set a deadline of December 31st of 2020. Is that right? Yes. And I want to set aside the part about taking too long. I want to go back to what the court ordered. It didn't just say, do an FMP, whatever you want. Do whatever kind of FMP. It says, it unambiguous requires the council to create a fishery management plan for each fishery under its authority. So it has to be for the fishery. And earlier I read you the phrase when the court said, fishery is a defined term. It means one or more stocks of fishers can be treated as a unit for purpose of conservation and management of any fishing for those stocks. Well, but why, I mean, we don't even know. They haven't done an FMP yet. So we have no idea whether the FMP, are you suggesting that they have to do a separate FMP for each fishery or that one FMP could cover all the fisheries? One FMP could cover the entire fishery, yeah. The problem is they're not proposing to do an FMP that covers the entire fishery. Okay. Well, that's a separate issue. I mean, once they get it done, I mean, theoretically the government has discretion here to decide. I mean, they might well split it up into different FMPs for different fisheries. I mean, that would be acceptable. Your Honor, it's not a problem of saying, let's do one for Sockeye and let's do one for Chinook or let's do one for this river. Let's do one for that river. We're talking about breaking it up for individual fish. So there's not two stocks of Kenai River Sockeye. The Kenai River Sockeye that breed in Alaskan waters and go to the ocean, that's the same stock of fish that's just crossing a jurisdictional line. It's the exact same thing. But your complaint is basically how they're approaching it. There's no final agency action on this. There's no final FMP. So I just don't understand what jurisdiction this court has to step in and say, well, you know, the process along the way doesn't look like it's going to reach the right result. We'll hear from the government and they can explain to us whether it will or whether it won't. But even if it weren't designed to be that, until there's a final agency action, I don't understand how we have jurisdiction to review that. I mean, that would be really unusual if the court were allowed to get in and dictate to agencies all the way along every regulatory step they take how they have to do it. I think it's within the court's authority to enforce this prior mandate. Yeah, a prior mandate was do an FMP. That hasn't been done. Nobody's going to disagree with that right now. The district court said do it by the end of the year. When the end of the year comes, presumably we're either going to have one of two things. We're either going to have a final agency action which can be reviewed. Make these arguments and say, hey, guess what? The final agency action didn't address each fishery. Or they're not going to get it done, in which case you can go back to the district court and say you've got to get it done by the end of the year, and they didn't do it. But I don't understand how us stepping in. I understand your desire to have us step in, but boy, this would be a really dangerous precedent if we started weighing it out. And I just don't think we have the authority under the APA. So if you look at one of the cases we cited in our brief, this Cayano, it's cited at page 42 of our brief. It talks about, there's a statement in there that as a policy matter, litigants who proceeded to judgment in higher courts will not be required to go through the entire process again to obtain extrajudicial judgment. And that's what the position we're being put here. The court didn't say do an FMP. It said do an FMP for the fishery. Right now they're not planning on doing an FMP for the fishery. They're thumbing their nose at that. They issued a legal memorandum from NOAA Office of General Counsel saying you don't have to do it for the entire fishery. You can just do it for the federal part of it. Well, and if you're right, then we will slap them down. But we're not going to do it until there's final agency action. That's not how it works. That's not the, that's not, there's precedent, Your Honor, for one, stepping into the middle of a remand. Of an agency? That was an agency decision, the case you're citing, Cayano? All right. Let's go. The example of an agency decision is the International Ladies Garment Workers Union case, 733 F. 22nd, 920, D.C. Circuit, 1984, cited in their brief at 26.9. That case, like this one, had a motion to enforce a prior appellate mandate. The agency during remand was allegedly violating what the appellate mandate said, and the district court refused to do anything about it. The court said that if you're following the mandate, you must act to enforce the mandate. That's what the court said. It didn't say, oh, it just requires an FMP. It just looked at the four corners of its own document. And that document wasn't a settlement agreement. Can I ask, because I know you want to reserve four minutes, on the relief, you said there's no relief for this summer. That's been the same issue for the last three summers, hasn't it? That's right. Okay. So has there been no interim, there's no interim FMP, if you will, or no interim plan on how to proceed? No. They just let the state do what it will. And that's unfortunate. Well, it may be unfortunate, but I just wonder whether, I mean, there really has been no discussion. How has that disadvantaged your claim? Your position is the state isn't treating you as fairly as you think the federal government will treat you? The argument is that it's ruining the commercial fishery. It's not going to be here. By the time we get to a final agency action without interim relief, there won't be a commercial fishery in Cook Inlet anymore. Gone. This is an important national food source. It's an important part of the economy. And the state's running it out of business and unsupervised by the National Marine Fishery Service. And I think, you know, we need interim relief in the meantime. Did you ask the district court judge for interim relief? We did. He said, he said, um, you should have asked the council for interim relief. Our response at the time and still is, is that the entities that can provide interim relief is the National Marine Fishery Service. They're the one that has given the fishery away to the state and their position on interim relief is, we'll close the fishery entirely. That's their interim relief. So it's not, you're just saying it, your, your position is it would be futile. I did have that question. Why didn't you go and try and negotiate something? And I take it. Your position is it's, it's futile. At least your view is it's futile to try and negotiate with the state on this. It is the state's, the state's actively trying to put my clients out of business. Okay. All right. We'll, we'll let you reserve time for a bubble. Uh, is Ms. Turkey, are you going first? I think you're on mute. Yeah, there you go. Okay. Um, let me see. Um, I'm Melinda on behalf of the National Marine Fishery Service. I'll be sharing my time with council for Alaska, Ms. Wolf. This appeal involves only a motion to enforce against the service, the judgment that was negotiated and proposed by the parties. There is really no serious question that the service has complied with the actual terms of the judgment. And so when, when plaintiffs... Well, hold on a second. I, I'm not sure. I mean, they may not have violated it, but that's different than saying they've complied with it. I mean, the terms of the settlement are that, that, that FMP is going to be created and that has not yet been done. So I'm not sure that you, I mean, actually complied with it yet, have you? Well, I should say they complied with everything that is, you know, has matured enough that it's supposed to do that. The process, let me, um, if I could briefly sort of highlight a couple aspects of the act, which I think tell us a little about what's going on here and provide the context. There's two aspects. First, the way that the act was designed primarily to address overfishing by foreign vessels in ocean waters. And to that end, Congress provides that the federal government will exercise fishery management authority over fishery resources, EEZ, which are called federal waters. Those are waters between three and 200 nautical miles from the coast. The act expressly preserves state's authority and jurisdiction over state marine and internal waters. Well, for fisheries though, doesn't the act also say that the federal agency can follow the fish upstream and can control them even if it's within the state waters? Um, I, you know, that has not been negated and I think it does not. I mean, let me put the prime appeal in this case, the merits of this case were broadly speaking about a relinquishment of federal authority in federal waters. What plaintiffs are trying to make this case about now, and it's really not within the scope of the case, is exactly what you're describing. They want to establish that the federal authority allows it to go all the way up to the headwaters in the state. Am I wrong that the act gives control over fisheries? And by their nature, especially salmon fisheries go both within the three mile and go without. So if the federal government through its priority has a right to control fisheries, doesn't it have a right to control fisheries both within the state waters and in the federal waters as well? That was the earlier decision I thought was fairly clear on that. Well, then let me go right to that earlier opinion because I think that is incorrect. What the, again, what was before the court was a removal of an area of federal waters from the salmon management plan. That plan has never included state waters. In fact, no fishery management plan ever has included state waters and fishing, regulated fishing in state waters, which is what they want here. And it's a very radical position that they are advocating. The issue that in the prior appeal was focused on section 1852. This court interpreted that provision to require the council prepare a fishery management plan for fisheries or fishery under its authority. And the question really never arose in that case whether fishing and fisheries that are occurring in state waters are under the council's authority. So it wasn't really disputed. It wasn't focused on. The focus of that case was whether the fishery in this area of federal waters needed conservation management under a plan. Now, so the issue about whether a council would have authority to manage fishing and fisheries that occur in state waters was not raised or litigated by the parties. And I think as the state's brief explains well in its brief at pages 35 to 38, the plaintiff's brief in the prior appeal correctly recognized the parameters of federal and state jurisdiction and argued that the council has a statutory management mandate to ensure that fishery in federal waters are governed by a fishery management plan. This was an unusual situation in which the state was managing the fishery in the federal waters. So can I just, because now I'm sort of seeing where this case is headed over the long haul, we're going to be back up here addressing this question, whether we address it now or whether we address it in a subsequent case. It sounds like there's a dispute whether the state fishery, you're not proposing to address the state fishery either on an interim basis from NIMS or even in the FMP because your position is you don't have authority to do that, right? The process under the act and what this court held was it's the council's obligation to prepare the fishery management plan. This is a unique process in the Magnuson Act where the council adopts the fishery plan and then goes to the service to review and it determines whether it complies with the act. If it does approve it, then it promulgates final regulations and the judicial review provision says that only those final implementing regulations can then be challenged and so there's not an opportunity for, you know, at these interim steps along the way. And really what the district court said is it's inappropriate for it to intervene at this stage because what they're saying is the council is considering alternatives that don't include state waters and we think they're on the wrong track and so we want you to intervene and tell the council what to do. The council is not a party. The courts have held that what the council is doing cannot be attributed to the service and a claim cannot be brought against the council. Okay, so just to clarify, I think you're answering my question to say NIMS, the FMP that NIMS is putting out, right? NIMS is putting out the FMP? No, the council is preparing the FMP. Oh, they're doing the FMP as well. I see. So NIMS will approve the FMP that the council is going to adopt. Right, and so what the district court's deadline that it said was by December for the council to have prepared that step of the way. And your position is that would not be challengeable when the council does it because that's not final agency action. You still have to have a NIMS act. They're going to be pretty upset come January when there's not in their mind a resolution that's appealable. How long do you think NIMS is going to take to approve that? Do you have any sense? No longer than one year from when the council acts. And that was a term of the judgment, the negotiated judgment, and then the district court reaffirmed that in its order on its motion. The timing of it, I mean, partly this negotiated judgment reflects what's in there, what the council can do, what the service can actually do. The service could, you know, affirmatively say we will take X amount of time. The service cannot control the council and say, you know, we can make the council do things with NSM. Well, but the district court stepped in now to, I guess, effectively control the council. But the point is now, I hadn't appreciated this before, that December isn't the end date. It's sort of another interim step that could last another year. And so we're back to what can we do for them in the interim? Because they're going to be back here next summer saying, well, we still don't have any interim relief for the fisheries, for the, you know, and I take it the response is you've got to go deal with the council for interim relief. Is that right? We have several responses on the interim relief. I think that, you know, to an extent, I would let me just, you know, quickly sort of bullet point these and then circle back. First of all, a court cannot order injunctive relief under the main law. Second, they've never told us what interim relief they want. So that kind of makes it difficult for me to respond to a specific injunction. But in general, the we, you know, as a member can only have interim relief under a specific section of the Act. It's 1855C. And so that requires a rulemaking for it to implement, adopt and implement interim measures. And that rulemaking means that the whole process is set up so all the stakeholders, both in the council process and in the rulemaking, so that all stakeholders that are interested in this fishery can participate. And to the extent they want us to sit down and have some, you know, a negotiation just with them, that's not something that would be countenance under the Act. By the same token, to have the court decide that we're going to give relief only for this part, you know, these people that are in this case, and we're going to not look at what the other fishery stakeholders may have to say about this, I think is also undercutting the Act. So that's one problem with them. The other problem, you know, and it's a major problem, the other problem, and I need to stop because I'm running, I think I'm running the council's time. Always go first when you split time. Right. The other problem is they haven't, you know, all they've talked about is their financial injury, but they haven't really addressed because they won't tell us what the even, the injunction they want are the other aspects, the harm to other parties, the public interest, and, you know, they're, I don't want to get false expectations. There's no way that the service is equipped to start regulating this in, you know, a matter of weeks. No, I'm fully understood. Thank you, Ms. Sturkey. Ms. Wolf. Oh, you're on mute. Can't hear you. There you go. Good morning. May it please the court, my name is Laura Wolf representing the state of Alaska. Now, before turning to the precise legal issues, I just want to give you a little background about why we're here. You're right, the plaintiffs think that they're going to do better, they're going to get a better shake if there's federal management rather than state management, but both federal and state law make conservation paramount, prioritize subsistence fishing, that is by Native Alaskans, and both promote and balance the different uses within the fishery. Commercial fishing is one of the uses that's in the national interest, but so too is the economic and recreational benefit to local communities. This includes guided sport fishing and what we call personal use fisheries, which means Alaskans gathering food for their families for the year. Notably state law already prioritizes commercial fishing and cook inlet for three of the five types of salmon. And I'd also like to really briefly address UC's narrative about state management being the cause of fewer fish returning to the inlet, which is simply untrue. That's why the experts at the service passed Amendment 12 in the first place. And finally, before turning to those issues, it's worth mentioning that when the runs are low, commercial fishermen aren't the only ones impacted by regulatory restrictions. There's also restrictions on sport fishers, there's also restrictions on personal use fishers. Now I mention these things because plaintiffs are giving the court a very skewed picture of the purpose of the Madison Act and the purpose of state law, and a very limited view of the public interest when asking for the extraordinary remedy of injunctive relief. Now regarding the legal issues, you're precisely right, there's no jurisdiction to review non-criminal agency action, and this court never instructed that an FMP should include state waters, that it should preempt state regulation of fishing in its own waters, or that state and federal interests must necessarily differ. It just did not say that. Regarding UCDA's new request for injunctive relief, federal law forecloses this possibility. A court can only set aside a rule, it cannot dictate of the substance of that rule. Perhaps that's why we don't know what the substance of this injunction they want is, but we also know that the court can't dictate an extra legal process for creating a rule. UCDA is asking the court to order the service to create a one-year FMP, pursuant to negotiation, instead of through rulemaking. But the Madison Act and the APA require that FMPs be created through rulemaking. This is a huge stakeholder process. And finally, even if the federal law did not foreclose the injunctive relief UCDA seeks, and it does, UCDA would not be entitled to an injunction anyway, nor would court management of the fishery be appropriate. Managing Cook Inlet is complicated. There are multiple runs of each of the five types of salmon in Cook Inlet, and it's often impossible for a commercial fisherman to discriminate between certain types of salmon. That means that when you give plaintiffs more opportunity to catch one stock of fish that maybe could be okay with more interception, that necessarily gives plaintiffs the opportunity to catch other species of concern. I see that my time is up here, so I would like you to affirm the District Court's order. Thank you very much. Mr. Morgan? Sure. Thank you, Your Honor. The discrete legal issue here is the scope of the FMP, and National Fisheries Service, not the council, is driving the bus on the scope of the FMP. It's their general counsel who wrote a memo to the council saying you don't have to do the entire fishery. I want to address the issue of federalism and preemption. The issue isn't whether or not the Magnuson Act grants exclusive management authority in state waters. That's an argument that's for another day. The question is, what is the scope that the FMP has to cover? NIMS' own regulation at 50 CFR 600-320B, cited in our briefs, says you shouldn't be constrained by political boundaries when you do your FMP. You should follow the fish. And that's essentially what we're asking for here. The FMP itself needs to cover the entire fishery, the fish, where they go. What's the point of conservation management measures if they end when fish get inside three miles? What's the point of establishing an annual catch limit or maximum sustained yield if all of that can be undone once the fish get inside state waters? The scope of the FMP, the legal issue that we're presenting here that we believe was decided, and you see the one, that's what we're asking for here. Once we get an FMP in place, and once there are regulations implemented, then it becomes a question of whether or not they can be managed with that effort. The final agency action, does the Magnuson Act provide any different relief than is available under the APA? Does the Magnuson Act allow interim decisions to be appealed in a way that the APA would not allow? I think one difference between the two is that you cannot get preliminary injunctive relief under the Magnuson Act. But we're not seeking preliminary injunctive relief. We've had a decision, and we're seeking to enforce that recognized wrong. I guess my question is, once a final agency action is brought, would you challenge it under the Magnuson Act or under the APA or under both? Under both, your honor. Is there any difference in the rules that can be challenged under the Magnuson Act than there is under the APA? I don't know the answer to that exactly. I'm not sure it's ultimately that the court has the authority to enforce this power of holding, regardless of whether there's a final agency action or not. They've been disregarding the mandate, and the court has the authority to enforce that. If I could just close briefly, my time is up. Commercial fishermen in Cook Inlet have been trying to get the federal defendants to manage their fishery for more than a decade. They've succeeded in getting relief, but the defendants are right back to shirking their duties again. They can't wait another 10 years. They can't wait another one year. They need relief now, and I respectfully request the court grant that relief. Thank you, counsel. Thank you, both of you, for your arguments, all three of you, for your arguments, and the case is now submitted. And that concludes our arguments for the day. This court for this session stands adjourned.
judges: Wallace, R. Nelson, Gwin